## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WADE COATS, | * | |
| Petitioner, | * | Criminal No. RDB-09-333 |
| v. | * | Civil Action No. RDB-15-910 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>MEMORANDUM OPINION</u>

Following a five-day trial, a jury convicted *pro se* Petitioner Wade Coats ("Petitioner" or "Coats") of one count of Conspiracy to Distribute and Possess with Intent to Distribute over 5 Kilograms of Cocaine, in violation of 21 U.S.C. § 846, and one count of Possession of a Firearm in furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). (Jury Verdict, ECF No. 143.) Judge Quarles of this Court[1] sentenced Petitioner to five hundred and forty (540) months' imprisonment for the drug charge and sixty (60) months' imprisonment for the firearm charge, to be served consecutively for a total term of 600 months with credit for time served. (ECF No. 230 at 2.) Petitioner subsequently appealed his conviction and sentence to the United States Court of Appeals for the Fourth Circuit, which affirmed this Court's judgement. *United States v. Cavazos*, Nos. 12-4701, 12-4737, 542 Fed. App'x 263 (4th Cir. Oct. 17, 2013).

---

[1] Judge William D. Quarles of this Court presided over Petitioner's trial and sentenced him. This case was subsequently reassigned to the undersigned upon Judge Quarles' retirement from this Court.

1

On March 31, 2015, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 280.) On January 4, 2016, Petitioner also filed a Motion to Compel Attorney to Surrender Case Files. (ECF No. 295.) Having reviewed the parties' submissions, this Court finds that no hearing at this time is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Petitioner's Motion to Compel (ECF No. 295)[2] is DENIED, and Petitioner's Motion to Vacate (ECF No. 280) is DENIED IN PART and STAYED IN PART. Specifically, all of Petitioner's claims are DENIED except his claim of ineffective assistance of counsel at sentencing and on appeal, which this Court hereby STAYS, pending appointment of counsel for the Petitioner.

<u>BACKGROUND</u>

The background facts of this case were fully set forth in Judge Quarles' September 30, 2011 Memorandum Opinion and the Fourth Circuit's October 17, 2013 Memorandum Opinion. *United States v. Cavazos*, No. WDQ-09-0333, 2011 WL 4596050 (D. Md. Sept. 30, 2011) (ECF No. 162); *United States v. Cavazos*, Nos. 12-4701, 12-4734, 542 Fed. App'x 263 (4th Cir. Oct. 17, 2013). To summarize, Coats was arrested as a result of observations of his activity on April 27 and 28, 2009 by Task Force Officers ("TFOs") of the Drug Enforcement Administration ("DEA"). *Cavazos*, 542 Fed. App'x at 264-65. Specifically, there were five officers involved in Coats' investigation: Brian Shutt, Dave Clasing, E.T. Williams, Mark Lunsford, and Derke Ostrow.[3] *Id.* at 264. The officers were investigating Ronald Brown ("Brown"), who was suspected of distributing large amounts of heroin. *Id.* While

---

[2] In this motion, Petitioner seeks various files from his trial counsel. Petitioner does not, however, state what files he seeks or what either his appellate counsel or the Clerk of this Court have not provided for him. (*See* ECF No. 300 (confirming receipt of a four-foot tall stack of files from appellate counsel).) Therefore, this motion is denied.

[3] As discussed *infra*, Lunsford was later investigated for and pleaded guilty to misconduct in other cases.

observing Brown, the TFOs observed an exchange between Brown and an individual later identified as Coats. *Id.* at 265. After the exchange, the officers observed Coats carry several bags from his car into the Marriott Waterfront Hotel in Baltimore, including a bag he had received from Brown. *Id.* When Coats left the hotel, the officers followed him to a seafood restaurant and cell-phone store before conducting a *Terry*[4] stop of Coats' rental car. *Id.* During the stop, the officers found a firearm on Coats' person. *Id.* at 266. Pursuant to a search warrant issued by the Circuit Court for Baltimore City, subsequent searches of Coats' hotel room, the cell-phone store, a Dodge Caravan connected with co-defendant Jose Cavazos ("Cavazos"), and other locations related to Brown's dealings revealed:

> (1) $274,000 in cash in heat-sealed plastic bags, a heat-sealer machine and bags, a money counter, cell phones, and a tally sheet from Room 943; (2) a suitcase with $337,482 in cash from the Dodge Caravan; (3) $16,520 in cash, paperwork, heat-sealer bags, and a gun magazine from the cell-phone store; and (4) 410 grams of cocaine, 238 grams of heroin, a bag of gel capsules, a gel capper press, scales, a metal strainer and spoon, and a cell phone from 1112 Harwall Road.

*Id.* at 266-67.[5]

A Grand Jury subsequently charged Coats and co-defendants Brown, Cavazos, and James Bostic ("Bostic"), with various offenses related to a conspiracy to distribute marijuana and cocaine. (ECF No. 66.) Bostic and Brown pleaded guilty. (ECF Nos. 85; 88.)[6] Coats and Cavazos continued to trial, and on February 9, 2011, the jury convicted Coats of Conspiracy

---

[4] Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), an officer may stop and briefly detain a person for investigative purposes when there is reasonable suspicion that criminal activity is afoot. *Id.* at 30. A "*Terry* stop" may involve the "temporary detention of [an] individual[] during the stop of an automobile by the police." *Whren v. United States*, 517 U.S. 806, 809 (1996).

[5] Room 943 was Coats' hotel room. *Cavazos*, 542 Fed. App'x at 266. The Harwall Road location was where officers had observed Brown sell narcotics to a confidential informant in a controlled buy. *Id.*

[6] James Bostic was sentenced on December 8, 2010 to 210 months' (17-and-a-half years') imprisonment. (Amended Judgment, ECF No. 116.) The record also reflects that Ronald Brown was placed on probation for a period of five years on March 4, 2014, and that he was discharged from supervision on October 18, 2017. (ECF No. 311.)

to Distribute and Possess with Intent to Distribute over 5 Kilograms of Cocaine (Count I) and Possession of a Firearm in furtherance of a Drug Trafficking Crime (Count III).[7] (*See* Superseding Indictment, ECF No. 66; Jury Verdict, ECF No. 143.) Cavazos was also convicted of Count I. (*See* Jury Verdict, ECF No. 141.)

While Coats and Cavazos were awaiting sentencing, on April 25, 2011, the Government provided FBI FD-302 forms ("the 302s") to Coats and Cavazos for the first time. *Cavazos*, 2011 WL 4596050, at *3. The 302s included notes from FBI agents in Dallas, Texas, related to interviews they had conducted with Alex Noel Mendoza-Cano ("Cano") about drug cartel activity. *Id.* Cano testified for the prosecution concerning Cavazos and Coats' links to the drug conspiracy. *Id.* However, the prosecutors did not become aware of the interviews conducted by the Dallas FBI agents or the 302s until after trial. *Id.* Upon receipt, the prosecutors notified the Defendants. *Id.*

After receiving the 302s, on May 5, 2011, Coats and Cavazos moved for a new trial. (ECF No. 151.) Judge Quarles determined that although the new evidence had not been provided to the Defendants and was favorable to them, it was not material. *Cavazos*, 2011 WL 4596050 at *8. He explained, "[a]lthough [the 302s] might have provided additional impeachment of Cano, they d[id] not undermine confidence in the outcome of the trial . . . The jury was aware that Cano had lied before and was testifying for a benefit." *Id.* Because the jury had sufficient evidence at trial to determine Cano's credibility, the evidence would

---

[7] Coats was charged in Counts I and III of the Superseding Indictment. (ECF No. 66.) At trial, Coats' counts on the verdict sheet were renumbered 1 and 2, inconsistent with the numbering of the Superseding Indictment. (ECF No. 143.) However, the content of those counts was consistent across the Superseding Indictment and the verdict sheet. Coats raised on appeal that this Court erred in its handling of the verdict sheet presented to the jury. The Fourth Circuit, however, determined that, "the district court simply renumbered the charges from the superseding indictment and the jury found Coats guilty of the very crimes of which the district court adjudicated him guilty. Accordingly, there was no error, and certainly no plain error." *Cavazos*, 542 Fed. App'x at 270. Therefore, Coats' charges will be referred to as Count I and Count III throughout this opinion per the Superseding Indictment. (ECF No. 66.)

have been merely cumulative. Therefore, on September 30, 2011, this Court denied the Defendants' motion for a new trial. (ECF Nos. 162, 163.) The Defendants appealed, and the Fourth Circuit affirmed the District Court's ruling. *Cavazos*, 542 Fed. App'x at 270-72.

On August 28, 2012, following a contested hearing, Judge Quarles sentenced Coats to five hundred and forty (540) months' imprisonment for Count I and sixty (60) months' imprisonment for Count III to be served consecutively for a total term of 600 months with credit for time served. (ECF No. 230 at 2; Sentencing Hr'g Tr., ECF No. 249, at 35-36.) Both Coats and Cavazos appealed their convictions and sentences to the Fourth Circuit. (ECF Nos. 225, 233.) They argued on appeal that the district court erred by (1) denying their pre-trial evidence suppression motions; (2) mishandling the verdict sheet presented to the jury; (3) refusing to grant a new trial based on the late disclosure of the 302s; and (4) imposing substantively unreasonable sentences. *Cavazos*, 542 Fed. App'x 263. The Fourth Circuit affirmed this Court on all grounds. *Id.* at 264.[8]

## STANDARD OF REVIEW

As the Petitioner proceeds *pro se*, this Court must construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Alley v. Yadkin County Sheriff Dept.*, No. 17-1249, 698 Fed. App'x 141 (Mem) (4th Cir. Oct. 5, 2017) (citing *Erickson* for the proposition that "[p]ro se complaints and pleadings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers").

---

[8] The Fourth Circuit did not consider Petitioner's claim that his appellate counsel offered ineffective assistance at sentencing or on appeal. In many cases, such a claim is properly asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991). A collateral attack on counsel's performance is especially suitable when a petitioner, like Coats, asserts that counsel provided ineffective assistance on appeal. What's more, Coats' appellate counsel had also served as his sentencing counsel, and appellate counsel declined to attack on direct appeal his *own* performance at sentencing.

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to a collateral attack. *Hill v. United States,* 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman,* __ U.S. __, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, procedural default will bar consideration under § 2255 of any matters that "could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains." *United States v. Pettiford*, 612 F. 3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)).

<u>DISCUSSION</u>

## I. Timeliness of Petitioner's Motion

A one-year statute of limitations applies to § 2255 petitions. 28 U.S.C. § 2255(f). The limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action

in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*; *see also Whiteside v. United States*, 775 F.3d 180, 183 (4th Cir. 2014). A conviction becomes final for the purpose of starting the one-year limitations period when the opportunity to appeal expires. *See Clay v. United States*, 537 U.S. 522, 524-25 (2003); *United States v. Sosa*, 364 F. 3d 507, 509 (4th Cir. 2004). After the Fourth Circuit affirmed Petitioner's conviction and sentence, he appealed to the Supreme Court of the United States. On March 24, 2014, the Supreme Court denied his petition for writ of certiorari. *Coats v. United States*, 134 S. Ct. 1571 (2014) (Mem). Therefore, his judgment of conviction became final on March 24, 2014. Petitioner did not file his Motion to Vacate until March 31, 2015. However, the Government has not challenged the timeliness of Petitioner's Motion, and this Court accords his pleadings liberal construction in light of his proceeding *pro se* in this matter. Accordingly, this Court will address the issues raised and will treat the motion as having been timely filed.

## II.    Police Misconduct Claim

Petitioner Coats asserts generally that he was arrested as a result of police misconduct. He claims that the DEA TFOs who arrested him "reverse engineered a drug conspiracy, with manufactured and false evidence." (ECF No. 280 at 19.)[9] To support this claim, Coats lists a number of perceived inconsistencies among facts presented at trial and suggests that the police failed to investigate certain leads. (*Id.*) The Supreme Court has held

---

[9] Petitioner's Motion (ECF No. 280) features inconsistent handwritten pagination. Citations to specific pages of this motion are therefore based on the automated ECF pagination stamps.

that there is no due process violation simply because "the police fail to use a particular investigatory tool." *Arizona v. Youngblood,* 488 U.S. 51, 58-59, 109 S. Ct. 333 (1988). This is because "police do not have a constitutional duty to perform any particular tests." *Id.*; *see also United States v. Teran,* Nos. 11-4791, 11-4844, 496 Fed. App'x 287 (4th Cir. Nov. 1, 2012) (determining that the government does not violate *Brady* simply by failing "to employ all investigative techniques"); *Werth v. United States,* 493 Fed. App'x 361, 366 (4th Cir. 2012) ("While the government is obligated to disclose favorable evidence in its possession, it is not required to create evidence that might be helpful to the defense.").

Coats does not allege that the Government withheld evidence.[10] Rather, he argues that the Government should have pursued certain investigatory paths that include: locating the online rental car agreement for Coats' rental car; securing video footage from the cell-phone store's surveillance system, the Baltimore City's surveillance system, and/or the lobby video from the Marriott Waterfront Hotel; and obtaining Coats' "cell-site information" from his cell-phone carrier for GPS information. (ECF. No. 280 at 20.) However, as explained above, the Government is only required to disclose the information it actually collects; it does not have a duty to collect information that may be helpful to a defendant.

Petitioner also seeks relief based on conduct by former DEA TFO Mark Lunsford. In September of 2009, a few months after Coats' arrest, Lunsford was charged with various

---

[10] Without leave of this Court, Petitioner filed a Supplemental Brief (ECF No. 312) months after his Reply (ECF No. 301.) This Supplemental Brief alleges in part that "the Government never turned over to Defendant[']s Counsel the DRUG LEDGERS, although it was seized by the Duncanville Police Department and turned over to the FBI in December of 2009." (*Id.* at 2.) These ledgers were mentioned in passing in the Cano 302s. (ECF No. 312-1 at 2.) Even if timely filed with leave of this Court, Petitioner's withholding claim fails because he provides no explanation of how the ledgers would have undermined Cano's testimony or otherwise served as exculpatory, material evidence at trial. As the Fourth Circuit has held, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess,* 730 F.3d 354, 359 (4th Cir. 2013). This Court also need not address the remainder of this untimely and unsolicited supplemental brief, which essentially constitutes an uncertified second or successive motion. *See* 28 U.S.C. § 2255(h).

theft and fraud offenses related to his duties as a DEA Officer. *United States v. Fisher*, 711 F.3d 460, 463 (4th Cir. 2013). One offense included falsely attributing information to a confidential informant with whom Lunsford was splitting reward money. *Id.* While Lunsford was not charged in relation to Petitioner's case, during a search warrant of Lunsford's home, the Government recovered personal items belonging to Coats, including a watch. (ECF No. 291 at 8.)

Petitioner claims that this is evidence that *all* of the officers in his case "attempted and did conspire to deprive (sic) Coats and later Jose Cavazos of Money, Property, Liberty and Life." (ECF No. 280 at 19.) To support his argument, Petitioner cites *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), where the United States Court of Appeals for the Fourth Circuit held that the defendant could withdraw his guilty plea after finding that Lunsford was "responsible for the investigation that led to the defendant's arrest and guilty plea" and his conduct "underpinned the search warrant for the defendant's residence." 711 F.3d at 469. In *Fisher*, the search warrant for the defendant's home and vehicle had been solely based on Lunsford's sworn affidavit, whereby he falsely testified that a confidential informant had told him that the defendant was distributing narcotics. *Id.* at 466. As the Fourth Circuit noted, the case was "extraordinary" and the facts presented "highly uncommon circumstances" where gross police conduct went "to the heart of the prosecution's case." *Id.* at 462, 466. Subsequent to the *Fisher* decision, this Court considered a petitioner's claim for relief based on Lunsford's conduct in *Rich v. United States*, Nos. 12-3226, 08-0438, 2013 WL 6055227 (D. Md. Nov. 14, 2013). In that case, this Court denied petitioner's claim after finding that unlike in *Fisher*, the petitioner "provide[d] no support for

the allegation that Lunsford 'played a central role' in [his] investigation." *Id.* at *4.

Like in *Rich*, Petitioner has not shown that Lunsford played a central role in his investigation. Several different officers observed Coats' exchange with Brown, his carrying several bags including one from Brown into the Waterfront Hotel, and his carrying several bags from the seafood store into his car. 52 Fed. App'x at 265. The officers then approached Coats' car, where Officer Shutt led the conversation. *Id.* After the officers determined that Coats lied about being at the hotel and found a gun on him, Coats was arrested. *Id.* at 265-66. Thereafter the officers went back to the hotel and entered the room identified as Coats' by hotel security. *Id.* at 266. In the hotel room, the officers saw heat-sealed wrapped packages and found Cavazos, who told them that there was about $200,000 in the room but that the drugs were not there yet. *Id.* After arresting Cavazos, the officers did *not* immediately search the room. *Id.* Rather, Lunsford secured the hotel room while other officers prepared the affidavit for the search warrant of the room.[11] *Id.* at 266.

Given the above facts, Lunsford's involvement in Petitioner's case does not amount to the type of "broad police conspiracy" Petitioner suggests. (ECF No. 280 at 18-21.) Multiple officers were consistently involved in the observations and investigations that led to Coats' conviction. The only time the record indicates Lunsford acted independently was while he secured the hotel room. *Cavazos*, 542 Fed. App'x at 266. Prior to being left to secure

---

[11] This Court previously explained that the affidavit:

> [D]escribed the telephone call and meeting between Brown and the C.I. and recounted the basis for the informant's knowledge that Brown was selling heroin. It described the meeting between Brown and Coats, as well as the agents' surveillance of Coats's drive to the Marriott. The affidavit included Coats's representation that that he had not been to the Marriott that day and mentioned the police scanner, fake licenses, firearm, and currency. The affidavit also noted that Coats had rented Room 943 and that Cavazos was in the room, and described the statements Cavazos gave to the agents. The affiant stated that Lunsford had found the Dodge Caravan registered to Crystal Cavazos in the Marriott's garage and a drug dog had alerted for narcotics in the van.

*Cavazos*, 542 Fed. App'x at 266.

the room, the officers saw heat-sealed wrapped packages and were told by Cavazos that there was around $200,000 in the room. *Id.* After obtaining the search warrant, the cash constituted the bulk of what the officers found: "$274,000 in cash in heat-sealed plastic bags, a heat-sealer machine and bags, a money counter, cell phones, and a tally sheet from Room 943." *Id.* at 266-67. Although Coats' personal items were later found in Lunsford's possession (ECF No. 291 at 8), there is no indication that he tainted evidence against Petitioner or affected the reliability of the evidence against him. *See Smith v. United States*, Nos. l:97-cr-341, l:15-cv-435, 2015 WL 5278349 (E.D. Va. Sept. 8, 2015) (denying petitioner's claim for relief based on police misconduct after finding that petitioner failed to show how his allegations bore on reliability of all evidence against him). Therefore, Petitioner is not entitled to relief on this ground.

### III. Prosecutorial Misconduct Claim

Coats contends that he was "deprived of a fair trial by the government[']s overreaching and manipulation of the process," in violation of his Fifth and Sixth Amendment rights. (ECF No. 280 at 28.) The Fourth Circuit has held that "'[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice' to establish prosecutorial misconduct." *United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004) (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)); *see also United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."). "The test for reversible prosecutorial misconduct generally has two components: that '(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or

conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988) (quoting *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985)).

First, Coats argues that the prosecutors should have granted Lunsford immunity so that he could testify in Coats' case.[12] (ECF No. 280 at 28-29.) Petitioner claims that granting immunity was necessary to "guard [his] constitutional right to present an effective defense" (ECF No. 280 at 28) and that it "would have been appropriate to compel the testimony of Lunsford" (ECF No. 301-1 at 7). This Court first notes that it is within the province of the prosecution to determine who should be granted immunity. *United States v. Klauber*, 611 F.2d 512, 519-20 (4th Cir. 1979). Next, as discussed *supra* with regard to Petitioner's police misconduct claim, the only time Lunsford acted independently in Coats' case is when he secured the hotel room. As the Fourth Circuit opinion describes, other officers observed the contents of the room prior to this time and obtained a search warrant which led to the discovery of substantial evidence. Petitioner therefore fails to show how – even if it was improper for the prosecution to not grant Lunsford immunity – this failure prejudicially affected Petitioner's rights to a fair trial.

Second, Coats asserts that allowing Alex Noel Mendoza-Cano ("Cano") to testify at trial "perpetrate[d] a fraud upon the Court," because the district court allowed him to use an interpreter. (ECF No. 280 at 29.) The Fourth Circuit addressed the issue of Cano's credibility in ruling on Coats' appeal, determining that "defense counsel was quite effective, without the 302s, in impeaching Cano . . . [T]he jury had strong reason to conclude that he

---

[12] Coats also references the prosecution's failure to charge Lunsford in relation to his case. However, he offers no reason the prosecution had an obligation to do so or how he was prejudiced. As stated above, Detective Lunsford entered a plea agreement and was sentenced related to his criminal conduct. (ECF No. 188 at 2-3.)

would testify falsely if he believed it would accelerate his return to his family." *Cavazos*, 542 Fed. App'x at 272. The Fourth Circuit further determined that additional evidence likely would not have "cast any further doubt on the truth of Cano's testimony concerning the existence and scope of the conspiracy." *Id.* Through his motion, Coats is seeking to "cast further doubt" on Cano's testimony despite the Fourth Circuit already recognizing that his counsel effectively discredited Cano during trial. As none of Petitioner's assertions amount to improper conduct prejudicial to his case, his claims of prosecutorial misconduct fail.

## IV. Ineffective Assistance of Counsel

A freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991). This rule is especially applicable to Petitioner's claim of ineffective assistance of sentencing and appellate counsel, who did not challenge his *own* performance at sentencing or on appeal. To state a claim for relief based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Id.* at 688. In making this determination, courts apply a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice" prong, requires that a petitioner demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687.

In applying the *Strickland* test, the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "an insufficient showing on one." *Moore v.*

*Hardee*, 723 F. 3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697. The Fourth Circuit has also held that the mere *possibility* of a different trial result does not satisfy the burden of proving prejudice. *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986).

### A. Trial Counsel

Coats asserts that his trial counsel was ineffective for a multitude of reasons. First, Coats asserts that his trial counsel failed to investigate several matters. As the *Strickland* Court explained, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," and it is for the court to decide whether in a particular case "identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 691. Specifically, Coats asserts that counsel failed to: investigate Baltimore City Police records, obtain surveillance camera footage, verify an address to use as impeachment, complete an on-site inspection of the area around his cell-phone store, investigate Cano, and obtain GPS records from a testifying witness. Given the number of assertions Petitioner makes, this Court addresses the prejudice prong of *Strickland*. Quite simply, Petitioner has failed to indicate how any of these steps could have resulted in a different outcome at trial. When evidence of guilt is overwhelming, there is not a reasonable probability that but for counsel's errors, the result would have been different. *United States v. Higgs*, 663 F. 3d 726, 742 (4th Cir. 2011). In this case, the DEA TFOs observed an exchange between Coats and Brown, observed Coats immediately go into

and depart from the Waterfront Marriott, and recovered a firearm and large amounts of cocaine and heroin from Coats, his hotel room, the Dodge Caravan, and locations related to Brown's dealings. *Cavazos*, 542 Fed. App'x at 265-68.

Similar to his failure to investigate argument, Coats alleges that several instances at trial constituted ineffective assistance. Specifically, Coats argues his trial counsel failed to: impeach Brown, request immunity for Lunsford, obtain a jury instruction regarding "compensated informant testimony," object to a "summary chart," call impeachment witnesses, and object to expert testimony. These claims fail to meet the *Strickland* test for several reasons. First, despite Coats' assertion, counsel did impeach Brown using prior convictions. (ECF No. 196 at 99-102.) Second, as discussed *supra*, it was entirely within the Government's discretion whether to grant Lunsford immunity. Third, a jury instruction regarding "compensated" informants would have been inappropriate given that Cano and Brown were not compensated. Finally, with regard to Petitioner's last three arguments, he fails to allege facts sufficient to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

Coats' third *Strickland* claim against his trial counsel is that he was denied access to discovery material pursuant to a discovery agreement counsel entered into with the Government. (ECF No. 280 at 24-25.) As this Court has explained, "[e]ntering into a discovery agreement with the Government is a common practice in this district . . . The discovery agreement prohibits counsel from providing a defendant with copies of discovery materials for reasons of witness safety; however, it allows counsel to review any discovery

materials with the defendant." *Smith v. United States*, 2013 WL 5945662, at *4 (D. Md. Nov. 5, 2013). As the Government's Reply brief affirms, the discovery agreement merely prevented counsel from creating copies of the discovery material to share with Coats. (ECF No. 291 at 29.) Trial counsel was "free to review the discovery material with Defendant at any time or place and use it to its full effect in preparation for and at trial." *Id.* By signing the agreement, trial counsel did not limit Coats' access to the discovery materials; he simply participated in a routine discovery procedure implemented to help ensure witness safety. His performance did not fall below an objective standard of reasonableness, nor is there evidence that signing such a boilerplate agreement was prejudicial to the outcome of Coats' case.

Finally, Petitioner argues that counsel had a conflict of interest, violating his right to counsel "unhindered by conflicts of interest." *Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir. 2001). The alleged conflict was that his trial counsel had filed a defamation suit against the *Baltimore Sun* and hired his co-counsel in Coats' trial to represent him. (ECF No. 280 at 22.) Plaintiff claims that this left counsel "[t]oiling from many conflicts . . . unable and or unwilling to render effective assistance." (*Id.*) However, Petitioner's argument for why this suit allegedly made counsel ineffective relies on the same type of allegations he offered for failure to investigate and ineffectiveness at trial. As explained above, such arguments do not meet the prejudice or performance prongs under *Strickland*, and accordingly, this claim fails.[13]

### B. Sentencing and Appellate Counsel

Petitioner also alleges that his sentencing and appellate counsel ("appellate counsel"),

---

[13] Coats also argues that his counsel was ineffective for not defending against Count III of the Superseding Indictment, possessing a firearm during a drug trafficking crime. Counsel did, however, defend against the underlying drug conspiracy, without which Petitioner could not have been convicted of Count III. Therefore, this claim fails.

who was appointed after Coats moved for new counsel, was ineffective. (ECF Nos. 171, 175.) Coats broadly asserts that he was "abandoned" by appellate counsel, and he provides a number of specific examples. (ECF No. 280 at 27.) Appellate attorneys are also held to the *Strickland* standard, and Coats must show that his counsel's performance was deficient such that it fell below an "objective standard of reasonableness." 466 U.S. at 688.

### 1. Consultation and *Pro Se* Motions

The Petitioner broadly alleges that appellate counsel failed to consult with him throughout the period of representation. Specifically, the Petitioner alleges that he made several attempts to engage in "meaningful dialogue" with appellate counsel, but was ignored. (ECF No. 280 at 15, 27.) Coats also contends that appellate counsel refused to assist in preparing four *pro se* motions,[14] though counsel did ensure those motions were filed. (*See* ECF No. 280 at 27.) For example, before the Fourth Circuit, Coats sought new appellate counsel in a *pro se* filing, Paper 52, complaining that appellate counsel refused to raise, among other issues, an alleged error under *Alleyne v. United States*, 570 U.S. 99, 107-109, 133 S. Ct. 2151, 2158 (2013) (discussed *infra*), and the issue of "whether the district court plainly erred under *Gall v. United States*, (2007, US), 552 U.S. 38, by failure to adequately explain the sentence imposed." (Fourth Circuit Docket No. 12-4737, ECF No. 52, at 11.) In the alternative, Coats sought leave to file *pro se* supplemental briefs. Without addressing this motion, two days later the Fourth Circuit issued its unpublished per curiam opinion affirming Coats' sentence. (Fourth Circuit Docket No. 12-4737, ECF No. 53.) After the

---

[14] Coats specifically identifies two motions filed with this Court, Papers 164 and 212, and two motions filed with the Fourth Circuit, Papers 52 and 66. In this Court, Coats filed Paper 164, a motion for new trial, on October 24, 2011. On July 3, 2012, Coats filed Paper 212, also a motion for new trial along with motions for reconsideration, recusal, and a hearing. During Coats' Sentencing Hearing, this Court denied both motions. (ECF No. 249, at 3-4.)

Fourth Circuit issued its opinion, Coats filed a second *pro se* motion, Paper 66, which asserts essentially the same *Alleyne* claim. (Fourth Circuit Docket No. 12-4737, ECF No. 66.) The Fourth Circuit rejected this brief as untimely. (Fourth Circuit Docket No. 12-4737, ECF No. 67.) Coats has largely re-asserted this *Alleyne* claim in the instant § 2255 motion, which this Court addresses *infra*. Coats' final contention regarding his relationship with appellate counsel is that he would not investigate "issues Coats had with this case." (ECF No. 280 at 27.)

As the Supreme Court has noted, "no court [can] possibly guarantee that a defendant will develop the kind of rapport with his attorney—privately retained or provided by the public—that . . . guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). The Government has not submitted an affidavit from appellate counsel to rebut any of these allegations, but the transcript of the Sentencing Hearing reveals that appellate counsel reviewed the PSR with Coats in preparation for the sentencing hearing, challenged Coats' classification as a leader or supervisor during the sentencing hearing, and provided assistance throughout the proceeding. (Sentencing Hr'g Tr., ECF No. 249 at 4-5, 7-10, 27.) Appellate counsel's representation therefore does not equate to "abandonment."

In terms of the *pro se* motions, an attorney owes his client competent legal representation, but the Constitution does not require the attorney to endorse every theory or strategy advanced by a client, and the Petitioner has no constitutional right to compel appointed counsel to assert every suggested issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Appellate counsel raised numerous issues during Coats' sentencing and appeal, *see*

ECF No. 214; *Cavazos*, 542 Fed. App'x 263, but the refusals by this Court and the Fourth Circuit to adopt those arguments do not themselves render appellate counsel's representation constitutionally defective. Additionally, Coats' conclusory allegation that appellate counsel did not investigate "issues," which Coats fails to identify, may be properly disregard by this Court. *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013). While far from laudatory or a model of professional conduct, appellate counsel's alleged communications were not constitutionally deficient or prejudicial.

### 2. Error in Sentencing Memorandum

Petitioner notes that counsel made an error by referring to another client in a sentencing memorandum to Judge Quarles. (ECF No. 214 at 2.) Such a typo does not fall below the standard of reasonable professional assistance, and Coats was not prejudiced by the error. *Strickland*, 466 U.S. at 689.

### 3. Drug Quantity in Presentence Report

The Petitioner argues that appellate counsel should have objected to the drug quantity listed in the Presentence Report (PSR), which is sealed. The Government responds that the drug quantity necessary for the maximum base offense level was easily attainable, based almost solely on the seized drugs and money directly recovered during the investigation. (Gov't Resp. 37, ECF No. 291.)

Coats has not advanced a cogent reason for questioning appellate counsel's decision not to object to the drug quantity in the PSR. The verdict form reflects that the jury found that "more than 5 kilograms of cocaine was involved," which was the highest option available on the form. (ECF No. 143.) At sentencing, this Court found that over 1,500

kilograms of cocaine was foreseeable. (ECF No. 249 at 8, 33.) In fact, this Court noted that a full accounting for the entire relevant time period would generate a quantity more than ten times required to meet the maximum base offense level. (*Id.* at 34-35.) Coats' claim of deficient performance on this score fails because any objection by appellate counsel would have been meritless.

### 4. 3553(a)(6) Disparity Consideration

Given that Petitioner has broadly challenged the effectiveness of appellate counsel, who allegedly engaged in minimal consultation with Coats, and that this Court should liberally construe *pro se* filings, this Court now turns to an issue that neither this Court nor the Fourth Circuit has addressed. Specifically, did appellate counsel provide ineffective assistance by failing to argue that Coats' sentence represents an "unwarranted . . . disparit[y] among defendants with similar records who have been found guilty of similar conduct"? 18 U.S.C. § 3553(a)(6) (stating that the court "shall consider" this factor, among others). In this case, co-defendant James Bostic was sentenced on December 8, 2010 to 210 months' (17-and-a-half years') imprisonment. (Amended Judgment, ECF No. 116.) Next, Jose Cavazos was sentenced on August 28, 2012 to 540 months' (45 years') imprisonment. (ECF No. 223.)[15] Petitioner Coats was sentenced on September 11, 2012 to 600 months' (50 years') imprisonment. (ECF No. 230.) The record also reflects that Ronald Brown was placed on probation for a period of five years on March 4, 2014, and that he was discharged from supervision on October 18, 2017. (ECF No. 311.)

During sentencing and on appeal, appellate counsel does not appear to have raised

---

[15] Cavazos also has a pending motion for a reduced sentence due to an amendment to the Sentencing Guidelines. (ECF No. 282.)

the issue of any disparity. When sentencing Petitioner, this Court explicitly considered Coats'
age, lack of criminal history, personal background, foreseeability of over 1,500 kilograms of
cocaine in the context of the conspiracy to distribute, and the recommended sentencing
range of 360 months to life imprisonment. *Cavazos*, 542 Fed. App'x at 273. This Court,
however, does not appear to have addressed the issue of any disparity under § 3553(a)(6).
(*See* ECF No. 249.) The Fourth Circuit went on to find "the court's analysis to be sound and
certainly no abuse of discretion." *Cavazos*, 542 Fed. App'x at 273.

As the parties' submissions have not adequately addressed this issue, this Court will
STAY this narrow claim of ineffective assistance of sentencing and appellate counsel to
enable (a) Petitioner to secure court-appointed counsel and (b) both parties to prepare
supplemental briefing on this issue.

## V.     Constitutionality of Sentence

Apart from the statutory considerations under 18 U.S.C. § 3553(a), Petitioner asserts
a direct constitutional attack on his sentence. He essentially argues that the Court
"constructively amended" the jury's verdict by making factual findings under a
preponderance of the evidence standard regarding the quantity of drugs involved. (*See* ECF
No. 280 at 30-32 (citing *Alleyne v. United States*, 570 U.S. 99, 107-109, 133 S. Ct. 2151, 2158
(2013)).)[16] He claims this error violated his constitutional rights.

Procedural default bars consideration under § 2255 of any matters that "could have
been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and

---

[16] In *Alleyne*, 570 U.S. 99, the Supreme Court held that any fact increasing the applicable mandatory minimum sentence
for a crime is an "element" of the crime, which the fact-finder must find beyond a reasonable doubt. This requirement is
distinct from findings related to a "sentencing factor." *Id.*

actual prejudice resulting from the errors of which he complains." *United States v. Pettiford*, 612 F. 3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)). Petitioner's appellate counsel did not present this issue to the Fourth Circuit. While Petitioner filed a *pro se* "Supplement Brief" asserting this claim after the Fourth Circuit had already ruled on his direct appeal (Fourth Circuit Docket, Case No. 12-4737, ECF No. 66), the Fourth Circuit refused to consider the untimely filing (Fourth Circuit Docket, Case No. 12-4737, ECF No. 67.) Petitioner therefore procedurally defaulted this claim, and Petitioner has not met his burden of showing cause and prejudice or actual innocence.

Even if this claim was not procedurally defaulted, Petitioner confuses calculations under the Sentencing Guidelines with factual findings increasing mandatory minimums, as addressed in *Alleyne*, 570 U.S. 99. At sentencing, the district court must "begin . . . by correctly calculating the applicable Guidelines range." *Gall v. United State*s, 552 U.S. 38, 49-50 (2007). To do so, "the district court must make relevant factual findings based on the court's view of the preponderance of the evidence." *United States v. Young*, 609 F.3d 348, 356-57 (4th Cir. 2010); *see also United States v. Montes-Pineda,* 445 F.3d 375, 380 (4th Cir. 2006). In drug conspiracy cases, one of the necessary findings of fact, even after a jury renders its verdict, relates to the quantity of drugs foreseeable to the defendant as part of the conspiracy. *See, e.g.*, *United States v. Hughes*, 401 F.3d 540, 546 25 (4th Cir.2005); *United States v. Vaughn*, 430 F.3d 518, 526 (2d Cir. 2005). It is well-settled that sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that range is treated as advisory and falls within the statutory maximum. *United States v. Benkahla*, 530

F.3d 300, 312 (4th Cir. 2008). In this case, the statutory maximum was life, *see Cavazos*, 542 Fed. App'x at 273, which permitted this Court to make factual findings under a preponderance standard in order to determine the applicable Guidelines range.

This same analysis establishes that Petitioner cannot show cause, in the form of ineffective assistance, for the procedural default of a meritless challenge. Therefore, this Court denies Coats' claim under § 2255 that his sentence is unconstitutional.

## VI.    Petitioner's Right to a Speedy Trial

Coats asserts there was a delay in his trial proceedings that violated his Sixth Amendment right to a speedy and public trial. (*See* Pet'r's Mot. at 33, ECF No. 280.) "The Speedy Trial Act of 1974 (Speedy Trial Act or Act), 18 U.S.C. § 3161 *et seq.*, requires that a criminal defendant's trial commence within 70 days after he is charged or makes an initial appearance, whichever is later, *see* § 3161(c)(1), and entitles him to dismissal of the charges if that deadline is not met, § 3162(a)(2). The Act, however, excludes from the 70–day period delays due to certain enumerated events. § 3161(h)." *Bloate v. United States*, 559 U.S. 196, 198 (2010). As is relevant here, "delay resulting from . . . proceedings concerning the defendant" is automatically excludable from a Speedy Trial Act calculation. 18 U.S.C. § 3161(h)(1); *United States v. Lucky*, 569 F.3d 101, 106 (2d Cir. 2009) ("Some exclusions are automatic. Other exclusions require judicial action." (citation omitted)). In addition, "delay resulting from a continuance" granted by the district court may be excluded if the district court makes the findings required by § 3161(h)(7)." *Bloate*, 559 U.S. at 198-99 (2010).

Petitioner alleges that an unspecified delay in his case sometime between his arrest on April 28, 2009, the trial commencement on January 31, 2011, and his sentencing on August

28, 2012 violated his Sixth Amendment right to a speedy trial. (ECF No. 280 at 33.) Coats' initial trial date was set for February 8, 2010. (ECF No. 58.) The record shows that there were three continuances in his case. The first two continuances were granted in response to requests made by the Government.[17] The Speedy Trial Act was tolled throughout this time and at no point in the record did defense counsel object to the Government's requests for continuance of trial. (*See* ECF No. 64.) As scheduled, Judge Quarles began hearing pre-trial motions on October 12, 2010. (ECF No. 100.) The Motions Hearing extended to October 13, 2010, at which time the Defendants requested a continuance of the trial date to secure necessary witnesses. (ECF Nos. 101, 103.) All parties agreed to this continuance, and the Court rescheduled the trial for January 31, 2011. (ECF Nos. 102, 103.) Judge Quarles granted the tolling of time under the Speedy Trial Act specifically requested for by the parties pursuant to 18 U.S.C. § 3161(h)(1)(D) and (h)(8). (*See* ECF No. 103.)

With each scheduling adjustment, time was tolled either automatically, after a defense motion, or at the request of the parties. Therefore, Petitioner's right to a speedy trial was not violated and his claim fails.

<u>CONCLUSION</u>

For the foregoing reasons, Petitioner's Motion to Compel Attorney to Surrender Case Files (ECF No. 295) is DENIED. Petitioner's Motion to Vacate (ECF No. 280) is DENIED IN PART and STAYED IN PART. Specifically, all of Petitioner's claims are

---

[17] On February 3, 2010, the Government filed a motion requesting the continuance of trial date based on the arrest of James Bostic made the day prior, on February 2, 2010. (ECF No. 64.) James Bostic was arrested as a part of the Government's ongoing investigation in preparation for Coats' trial. *Id.* The Government's motion was granted, and a new trial date was set for August 2, 2010. (ECF No. 65.) James Bostic was subsequently added as a co-defendant in this case. (ECF No. 66, 68.) On June 4, 2010, the Government requested a second continuance due to the scheduling conflict of a key Government witness, TFO Brian Shutt. (ECF No. 74.) The Government's motion was granted on July 26, 2010, and a new trial date was set for October 12, 2010. (*See* ECF No. 79.)

DENIED except his claim of ineffective assistance of sentencing and appellate counsel, which this Court hereby STAYS to enable (a) Petitioner to secure court-appointed counsel and (b) both parties to prepare supplemental briefing on this issue.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability if it "enters a final order adverse to the applicant." This Memorandum Opinion and accompanying Order, however, do not constitute a "final order adverse to the applicant" as, pursuant to the STAY, this Court has yet to resolve Petitioner's claim of ineffective assistance of sentencing and appellate counsel.

A separate Order follows.

Dated: March 30, 2018

_____/s/_____

Richard D. Bennett
United States District Judge